Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 1 of 14

Chad Strang                                    Nair Rodriguez vs. Warren Theatres et al.
February 13, 2017                                         Case No. CIV-2016-150-D

Page 1

IN THE UNITED STATES DISTRICT COURT
DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) NAIR RODRIGUEZ, AS NEXT OF
KIN TO THE ESTATE OF LUIS
RODRIGUEZ
(2) NAIR RODRIGUEZ INDIVIDUALLY AND
(3) LUINAHI RODRIGUEZ INDIVIDUALLY,



   Plaintiffs,

vs.                                   No. CIV-2016-150-D

(1) WARREN THEATRES, OKLAHOMA
(2) WARREN THEATRES, LLC
(3) BRIAN CLARKSTON,
(4) TYLER HOWSER,
(5) CHAD STRANG,
(6) THE CITY OF MOORE POLICE DEPARTMENT,
(7) JOSEPH BRADLEY,
(8) RYAN MINARD,
(9) MIDWEST REGIONAL MEDICAL CENTER,
(10) MIDWEST MEDICAL CENTER,
(11) GUY RODOLPH, AND
(12) JASON SMITH,

   Defendants

VIDEOTAPE DEPOSITION OF CHAD STRANG
TAKEN ON BEHALF OF THE PLAINTIFFS
ON FEBRUARY 13TH, 2017 AT 10:58 A.M.
IN OKLAHOMA CITY, OKLAHOMA

WORD FOR WORD REPORTING, LLC
111 HARRISON AVENUE, SUITE 101
OKLAHOMA CITY, OKLAHOMA 73104
(405) 232-9673

REPORTED BY: Jessica L. Weathington, CSR

Chad Strang                                    Nair Rodriguez vs. Warren Theatres et al.
February 13, 2017                                          Case No. CIV-2016-150-D

Page 35

```
 1      A    Yes.
 2      Q    Who was that?
 3      A    Casey Young.
 4      Q    Did you and Mr. Young handcuff the driver?
 5      A    Yes.
 6      Q    And put him in your state vehicle?
 7      A    I was riding with Casey, so we put him in
 8   his vehicle.
 9      Q    Okay.  And then you let the female go at
10   that point because you thought it was someone else?
11      A    Yeah.  We issued a citation.
12      Q    Do you recall of any other of the arrests
13   that you've made where you've had to pull a firearm
14   on a suspect?
15      A    No.
16      Q    Have you ever had to --
17      A    Back up.  I guess I have.
18      Q    Okay.
19      A    It was the incident on I-35 with the
20   trooper that, it was after -- what do you want to
21   know, I guess?
22      Q    Well, my question was have you ever had to
23   pull a firearm during the course and scope of your
24   employment on an individual?
25      A    Yes.
```

Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 3 of 14

Chad Strang
February 13, 2017

Nair Rodriguez vs. Warren Theatres et al.
Case No. CIV-2016-150-D

Page 36

1  Q   Okay. And what were the -- what was going
2  on in that incident that caused you to need to do
3  that?
4  A   It was a traffic stop that ended up with
5  the suspect fighting with the trooper and myself.
6  Ended up in a fight for my firearm as the suspect
7  was trying to take my firearm. And trooper was
8  forced to shoot the suspect. Got him handcuffed and
9  then the -- there was other occupants in the car at
10 that point, so I did draw my gun and held them at
11 gunpoint in the vehicle until backup arrived.
12 Q   And when was this?
13 A   September, I think, 2013.
14 Q   The trooper actually shot the suspect?
15 A   Yes.
16 Q   He was trying to get the trooper's gun or
17 you're gone, I'm sorry?
18 A   My gun.
19 Q   Did the suspect die?
20 A   No.
21 Q   Had you pulled over the car in a routine
22 traffic stop?
23 A   No.
24 Q   How were you involved, I guess?
25 A   Trooper. Trooper called for backup and I

Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 4 of 14

Chad Strang                                    Nair Rodriguez vs. Warren Theatres et al.
February 13, 2017                              Case No. CIV-2016-150-D

Page 55

1  percent sure their names.
2      Q    Where is Tyler at this point?
3      A    He is still with the other lady at --
4  behind us.
5      Q    So the other two officers walk up, you're
6  still face to face with Mr. Rodriguez.  And then
7  what occurs?
8      A    There was three officers, the off duty --
9  Clarkston that was security and the two on duty
10 officers.  Basically they walk up and I kind of, I
11 look at them and give them the look.  You guys are
12 on duty.  It's your baby.  You know, I just -- I've
13 detained, kept the parties separated at that point
14 for them to take over the investigation.
15     Q    So do you step back, you step to the side,
16 do you run back up to the building?  What do you do?
17     A    I kind of step back.  Back off to the side
18 just a little bit.
19     Q    Okay.  Then what do you witness happen?
20     A    The officer that don't have glasses, I
21 don't know, I don't know his name.
22     Q    Well, we might as well, let's see if we
23 can identify everybody.  I think that would be
24 easier.  So we'll mark this.
25          MR. COLLINS:  Take a break if we can.

Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 5 of 14

Chad Strang
February 13, 2017

Nair Rodriguez vs. Warren Theatres et al.
Case No. CIV-2016-150-D

Page 61

1  true?
2     A    It was just the way he was acting and not
3  cooperating, I didn't know if that was the whole
4  story or not.
5     Q    How was he not cooperating?
6     A    He kept trying to get around me to -- to
7  this other lady.
8     Q    Did you put him under arrest?
9     A    No.
10    Q    Did he have any reason not to be able to
11 walk to his car?
12    A    I was -- we were -- there was a crime that
13 had occurred and we were trying to separate the
14 parties.
15    Q    How did you know a crime had occurred if
16 you didn't see it?
17    A    Well, I had been told an assault had
18 happened.  Then at that point he had just admitted
19 that a domestic battery had occurred.
20    Q    But not by him, so you didn't detain him?
21         MR. KIRK:  Object to the form.
22         THE WITNESS:  I was keeping the parties
23    separated until the on duty officers arrived.
24    Q    (By Ms. Osenbaugh) And you were able to
25 keep them separated, correct?

Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 6 of 14

Chad Strang                                         Nair Rodriguez vs. Warren Theatres et al.
February 13, 2017                                                  Case No. CIV-2016-150-D

Page 62

1    A    Yeah.
2    Q    And so then the other officers come up and
3   you step back and let them take over; is that
4   correct?
5    A    Yes.
6    Q    Then what occurs?
7    A    What you wanting?  I guess I don't know
8   what you want.
9    Q    So did Mr. Rodriguez, did you say anything
10  further to Mr. Rodriguez?
11   A    No.
12   Q    Did anybody else say anything to
13  Mr. Rodriguez?
14   A    The Moore officers started talking to him.
15   Q    And what -- what did he say?
16   A    Basically the same -- same stuff, you
17  know.  Domestic battery has apparently occurred.
18  You're a witness to that crime.  We're
19  investigating.  We're going to need everybody's IDs.
20   Q    What were you guys going to do with the
21  IDs?
22   A    At this point it was what Moore PD was
23  going to do with their IDs.  I was going to hand it
24  to them, and they were going to -- they were on duty
25  and they were going to take care of the

Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 7 of 14

Chad Strang
February 13, 2017

Nair Rodriguez vs. Warren Theatres et al.
Case No. CIV-2016-150-D

Page 76

1    finished --
2         MS. OSENBAUGH:  I'm sorry.
3         MR. KIRK:  -- answering the question?
4         MS. OSENBAUGH:  I'm sorry.
5         THE WITNESS:  Was trying to gain control
6    of Mr. Rodriguez before it escalated any
7    further.
8    Q    (By Ms. Osenbaugh) Was Mr. Rodriguez under
9    arrest?
10        MR. JAMES:  Object to form.
11        THE WITNESS:  That would be -- that was up
12   to the Moore officers.  I believe they
13   explained what was going to happen and, it's a
14   very -- you know, just because you're putting
15   somebody in handcuffs doesn't mean they're
16   under arrest.
17   Q    (By Ms. Osenbaugh) Who explained what was
18   happening?  You just said they explained what was
19   happening.
20   A    Oh, the officers that were talking to him.
21   After they took over, they explained, you know, at
22   the very least a victim to the crime.  You need to
23   cooperate by law.
24   Q    Did someone read him Miranda rights?
25   A    No.

Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 8 of 14

Chad Strang                                    Nair Rodriguez vs. Warren Theatres et al.
February 13, 2017                                       Case No. CIV-2016-150-D

Page 89

1    Q    Why would five officers need to kick or
2  hit Mr. Rodriguez when there's five officers on top
3  of him?
4         MR. KIRK:  Object --
5              (Exhibit 3 was marked for
6              identification).
7    Q    (By Ms. Osenbaugh) And I'll just refer
8  you to Plaintiff's Exhibit 3 where it appears that
9  five officers are on top of him.  You're on his
10 head.
11        MR. COOPER:  Object to the form.
12        MR. KIRK:  Object to the form of the
13   question.  You can tell her what Exhibit 3
14   shows to you, Chad.  And the question is why
15   would five officers be needed to do what they
16   did to Mr. Rodriguez.
17   Q    (By Ms. Osenbaugh) Let's clarify the
18 question.  The question is why would five officers
19 need to kick or hit Mr. Rodriguez when the -- when
20 they're on top of him?  Why would five individuals
21 need to do that?
22        MR. KIRK:  Okay.  And that
23   mischaracterizes the evidence and this
24   witness's testimony to date.  And I'm not going
25   to agree you can ask questions which are

Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 9 of 14

Chad Strang                                      Nair Rodriguez vs. Warren Theatres et al.
February 13, 2017                                           Case No. CIV-2016-150-D

Page 90

1   misleading and inaccurate.
2           MS. OSENBAUGH:  And you can object --
3           MR. KIRK:  No.  I'm not instructing him to
4   do anything.  I'm asking you to stick to the
5   evidence in the case and not make up stuff,
6   Mrs. Osenbaugh.
7           MS. OSENBAUGH:  I'm not making anything
8   up.
9           MR. KIRK:  You are making something up.
10  None of these pictures show any officers on top
11  of your client's deceased husband.  They're
12  holding him down.
13          MR. JAMES:  Or kicking him is my
14  objection.
15          MR. COOPER:  To be clear, is Exhibit 3 the
16  same as Exhibit 1?
17          MS. OSENBAUGH:  No.
18          MR. COLLINS:  Can we see it?
19          MR. COOPER:  Can we see a copy?
20          MR. KIRK:  The question, Mr. Strang, is
21  why would five officers need to kick or hit
22  Mr. Rodriguez.  And then Ms. Osenbaugh contends
23  while the officers were on top of
24  Mr. Rodriguez.
25          THE WITNESS:  Officers would use pain

Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 10 of 14

Chad Strang
February 13, 2017

Nair Rodriguez vs. Warren Theatres et al.
Case No. CIV-2016-150-D

Page 91

1    compliance to get this -- get the subject to
2    comply where they can get him in handcuffs
3    would be the only reason they would hit him.
4    Anyone would hit or kick a subject.
5    Q    (By Ms. Osenbaugh) I'm sorry to go
6    backwards, but I don't think I asked you this. When
7    Mr. Rodriguez stepped back with his hands clenched,
8    was that the only thing that occurred that caused
9    you to think that he was being aggressive?
10             MR. JAMES:  Object to form.
11   Q    (By Ms. Osenbaugh) And that's my word, not
12   yours, so I apologize.  You kind of had told us
13   earlier that you thought he might punch someone?
14   A    Right.
15   Q    Okay.  I'm not trying to put words in your
16   mouth, but is there any other mannerisms or things
17   that he did that caused you concern at that point?
18   And this is before you -- they went to the ground.
19             MR. JAMES:  When you say -- I object to
20         the point right when it happened or all the
21         facts that leading up to the happening.
22             MS. OSENBAUGH:  No.  Just right -- I'm
23         just talking about when he steps backwards.
24             THE WITNESS:  I just -- to me, that's a
25         clear, we're fixing to fight stance is what

Chad Strang
February 13, 2017
Nair Rodriguez vs. Warren Theatres et al.
Case No. CIV-2016-150-D

Page 96

1       MR. COOPER: Object to form.

2   Q  (By Ms. Osenbaugh) -- at the time that he
3 steps back?

4   A  I just -- I didn't know who he was
5 fighting. I just knew he was in a fighting stance.

6   Q  He wasn't facing his daughter, though,
7 correct?

8   A  No.

9   Q  Did any of the officers talk to his
10 daughter when they walked up?

11   A  I don't remember. I don't think so.

12   Q  Was his daughter yelling or talking or
13 screaming at the time that the other officers walk
14 up or thereafter?

15   A  I don't remember any yelling or screaming.

16   Q  You had mentioned earlier in the depo,
17 though, that you did recall Nair yelling and
18 screaming when she walked up?

19       MR. COLLINS: Object to form.

20       THE WITNESS: Earlier I was talking about
21 when it was on the ground.

22   Q  (By Ms. Osenbaugh) Okay. So let's go back
23 to that. You said that you stopped what you were
24 doing because she was screaming?

25   A  Yes.

Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 12 of 14

Chad StrangNair Rodriguez vs. Warren Theatres et al.
February 13, 2017Case No. CIV-2016-150-D

Page 97

1  Q   Okay. What did you do?

2  A   Once they hit the ground the first time
3  and I was trying to get his right arm, that's when
4  the -- turned out to be the wife come running up.
5  She's reaching in her purse. I just happen to look
6  up. She's reaching in her purse. So I -- they kind
7  of, the whole pile kind of pushes past me and I
8  stand up to go make sure she's not going to pull a
9  weapon and keep her back. Just basic domestic abuse
10 case, you know. Keep -- keep them separated.

11Didn't want the -- didn't want her to
12 come over there and start hurting officers. So I'm
13 keeping her back. And she -- of course, she's --
14 she's yelling and screaming but mainly at him. And
15 --

16 Q   What is she saying?

17 A   She -- she just keeping saying Poppy.
18 What I -- what I remember the most.

19 Q   But then -- then you go back and put your
20 hand back on his head after that?

21 A   After that I go and turn around and they
22 still haven't got it -- they're still -- he's still
23 resisting. You know, they're still telling him,
24 stop resisting. Trying to get -- they don't have
25 any of his hands behind his back to get him in the

Chad Strang
February 13, 2017

Nair Rodriguez vs. Warren Theatres et al.
Case No. CIV-2016-150-D

Page 124

1  they were doing something inappropriate?
2      A    No.
3      Q    And was that because you thought that all
4  actions appeared to be appropriate in light of the
5  challenges confronting you?
6      A    Yes.
7      Q    You have personally been involved in an
8  incident where a person tried to grab your service
9  weapon, haven't you, sir?
10     A    Yes.
11     Q    Did that frighten you?
12     A    Absolutely.
13     Q    You were wearing a service weapon on the
14 night of this incident, weren't you, sir?
15     A    Yes.
16     Q    And were other officers wearing weapons as
17 well?
18     A    All of them, yes.
19     Q    Is it a concern of law enforcement
20 officers that persons with whom they come in contact
21 might attempt to take their weapon from them and
22 turn it on them?
23     A    Yes.
24     Q    And is that something that you think about
25 every time you have to confront someone?

Case 5:16-cv-00150-D   Document 148-4   Filed 04/06/17   Page 14 of 14

Chad Strang                                          Nair Rodriguez vs. Warren Theatres et al.
February 13, 2017                                                    Case No. CIV-2016-150-D

Page 125

1       A       Yes.
2               MR. KIRK: I think that's all I have.
3                       CROSS-EXAMINATION
4               MR. JAMES:
5       Q       Let me just ask one, because I don't think
6    it was clear. During one of the exchanges with
7    Ms. Osenbaugh that the word flashlight got added in.
8    Did you have a flashlight on you that night?
9       A       I did.
10      Q       Okay. What kind was it?
11      A       Just a little stinger -- a little short --
12      Q       It wasn't a large mag light?
13      A       No. I carried it in my pocket.
14      Q       Did you ever pull it out that night?
15      A       I don't think so.
16              MR. JAMES: Nothing else.
17                      CROSS-EXAMINATION
18   BY MR. COOPER:
19      Q       Officer Strang, if you could look at
20   Plaintiff's Exhibit Number 2, the Moore police
21   officer with the hat on, do you have -- Ms --
22   plaintiff's counsel has asked you about this. You
23   don't believe that that officer was throwing a punch
24   in that picture, do you?
25      A       No.